**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SERVICIOS COMERCIALES LAMOSA, S.A. DE C.V. and REVESTIMIENTOS PORCELANITE, S.A. DE C.V., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:16-CV-54-L |
| MAURICIO DE LA ROSA, MUNDO TILE, LTD., MT TRADING LLC, and MT GROUP REAL ESTATE LLC, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff Revestimientos Porcelanite, S.A. de C.V.'s Motion for Summary Judgment (Doc. 90), filed April 17, 2018; Plaintiff Servicios Comerciales Lamosa, S.A. de C.V.'s Motion for Summary Judgment (Doc. 93), filed April 17, 2018; Plaintiffs' Motion to Exclude the Opinion Testimony of Defendant Mauricio De la Rosa (Doc. 96), filed April 17, 2018; and Plaintiffs' Motion to Strike Jury Demand (Doc. 98), filed April 17, 2018.[1] Having considered the motions, legal briefing, appendixes, evidence, record, and applicable law, the court **denies** Plaintiff Revestimientos Porcelanite, S.A. de C.V.'s Motion for Summary Judgment (Doc. 90); **denies** Plaintiff Servicios Comerciales Lamosa, S.A. de C.V.'s Motion for Summary Judgment (Doc. 93); **denies** Plaintiffs' Motion to Exclude the Opinion Testimony of

---

[1] Although these four motions were originally filed by Plaintiffs on April 17, 2017, the court denied the motions without prejudice on March 29, 2018, after concluding, sua sponte, that Plaintiffs' jurisdictional allegations pertaining to the citizenship of the parties were deficient. *See* Mem. Op. & Order (Doc. 75). On April 10, 2018, Plaintiffs filed an Amended Complaint (Doc. 87) affirmatively setting forth the citizenship of each party. On April 12, 2018, the court issued an order confirming that the amended pleading cured the pleading deficiencies previously noted and directed the parties to refile their motions, legal briefs, and evidence. *See* Order (Doc. 76).

Defendant Mauricio De la Rosa (Doc. 96); and **denies** Plaintiffs' Motion to Strike Jury Demand (Doc. 98).

## I.      Factual Background and Procedural History

This action arises from a contractual dispute between Mexican manufacturers of ceramic tile products and their Texas-based distributor.   On January 8, 2016, Plaintiffs Servicios Comerciales Lamosa, S.A. de C.V. ("Lamosa Commercial Services") and Revestimentos Porcelanite, S.A. de C.V. ("Porcelanite") (sometimes collectively, "Plaintiffs")—manufacturers of flooring products, headquartered in Mexico City, Mexico—brought this action against Mundo Tile, Ltd., MT Trading LLC, MT Group Real Estate LLC, and Mauricio de la Rosa ("Mr. De la Rosa") (sometimes collectively, "Mundo Tile" or "Defendants").   Lamosa Commercial Services and Porcelanite seek recovery of approximately $3 million in damages from Mundo Tile for breach of contract claims arising from promissory notes Mundo Tile executed in their favor but has not paid.   They also seek to recover against Mr. De la Rosa individually for breach of contract, alleging he failed to make payments under the terms of a guaranty agreement.   In addition to their respective breach of contract claims, Lamosa Commercial Services and Porcelanite seek to foreclose on real property Mundo Tile pledged in satisfaction of its then-existing and future indebtedness. They also seek attorney's fees.

Mundo Tile contests Lamosa Commercial Services's and Porcelanite's entitlement to recover under the promissory notes and Mr. De la Rosa's guaranty agreement, or to foreclose on real property, asserting affirmative defenses of fraud, fraudulent inducement, offset, and waiver. Mundo Tile has also filed counterclaims against Lamosa Commercial Services and Porcelanite for breach of contract, fraud and fraudulent inducement, promissory estoppel, and unjust enrichment.

Lamosa Commercial Services and Porcelanite move for summary judgment on their respective affirmative breach of contract claims and on Mundo Tile's affirmative defenses and counterclaims. Lamosa Commercial Services and Porcelanite also move to exclude Mr. De la Rosa's testimony concerning Mundo Tile's lost profits and, asserting waiver, move to strike Mundo Tile's demand for a jury trial. The court now sets forth the facts in accordance with the standard in Section II(A) of this opinion.[2]

## A. Porcelanite and Mundo Tile Enter into Distributorship Agreement.

Porcelanite manufactures ceramic tile products in Mexico and ships its products throughout the United States via a network of distributors. Mundo Tile owns and operates ceramic tile and flooring stores in Texas. Mr. De la Rosa is the founder and owner of Mundo Tile. Prior to forming Mundo Tile in 2003, Mr. De la Rosa was employed by several subsidiaries of Grupo Carso, including ConduMex Group and Porcelanite, from approximately 1989 through 2003, and was involved in the purchase, logistics, and manufacturing of Porcelanite-brand tile in the United States and Mexico.

In the late 1990s, Porcelanite-brand tile did not have a strong presence in the United States and was more popular in Central and South America. In the early 2000s, to boost its presence in the United States, Porcelanite began using United States-based distributors to sell its tiles in states with large Hispanic populations, including in California and Arizona, and in El Paso, Texas. In late 2002, Mr. De la Rosa spoke with Porcelanite's Chief Executive Officer, Antonio Gomez, as well as the chairman of Grupo Carso, Alejandro Aboumrad, about plans to return to the United States to open a tile store. They encouraged him and told him to confer with

_____

[2] The court's recitation of the facts is taken from the uncontested evidence contained in the summary judgment record provided by the parties, or evidence to which the court has overruled a party's objection. All evidence is viewed in the light most favorable to the nonmoving party, Mundo Tile (*see infra* Section II.A), and contested facts are noted. The court only cites to the record when it is directly quoting from it.

Felix Aguirre ("Mr. Aguirre"), Porcelanite's Exports Director, about his plans to open a Porcelanite-brand tile distributorship in the United States. In or around 2003, Mr. Aguirre gave Mr. De la Rosa permission to open an exclusive Porcelanite distributorship for the cities of Dallas/Fort Worth, San Antonio, Houston/Galveston, Waco, Austin, and Laredo. This agreement was not in writing. Lamosa Commercial Services and Porcelanite dispute the existence of an exclusive distributorship agreement with Mr. De la Rosa, although they concede that Porcelanite and Mundo Tile entered into a distributorship agreement.

In 2003, Mr. De la Rosa quit his job, moved from Mexico City, Mexico, to Dallas, Texas, and opened his first Mundo Tile store in Dallas, Texas, designed as a Porcelanite-brand tile distributor. Other stores followed. During the first years, with the exception of a wall tile from a Spanish manufacturer, Mundo Tile sold only Porcelanite products. When new customers or potential distributors would approach Porcelanite about purchasing Porcelanite-brand tile or opening a distributorship, Porcelanite would reject the request, sending the customers to Mundo Tile and explaining that Porcelanite already had a distributor, and that Mundo Tile was the only place to buy Porcelanite-brand tile in Texas. Porcelanite was now exporting massive amounts of tile to the United States, and a vast majority of its Texas exports was being sold by Mundo Tile. By 2007, Mundo Tile was approaching or exceeding $10 million in annual revenue, expanding its operations in Texas, and had been granted exclusive rights to sell Porcelanite-brand tiles in Oklahoma and Colorado. In exchange for exclusive rights, Mundo Tile underwrote significant advertising on behalf of Porcelanite and passed on the opportunity to diversify its offerings.

### B. Grupo Lamosa Acquires Porcelanite in November 2007.

In or around November 2007, Porcelanite was acquired by a competitor, Grupo Lamosa, S.A.B. de C.V. ("Grupo Lamosa"), a Mexican-based manufacturer of less expensive tiles and

floor coverings.[3] Grupo Lamosa used two separate subsidiary entities for its multiple brands, Lamosa Commercial Services, formed in December 2007, responsible for selling Lamosa-brand tiles, and Porcelanite, responsible for selling Porcelanite-brand tiles. For some time thereafter, Mundo Tile's account representatives and accounting contacts remained the same as prior to Grupo Lamosa's acquisition of Porcelanite. After the acquisition, however, Mundo Tile began to receive isolated reports of Porcelanite-brand tile being sold by Mundo Tile's competitors. When Mr. De la Rosa confronted his Grupo Lamosa contacts about these sales, he was reassured that the sales were isolated mistakes and that the exclusive distributorship agreement remained intact. In 2009, Mr. Aguirre left his position as United States Exports Director for Grupo Lamosa and was replaced by Hector Welsh ("Mr. Welsh").

### C. Other Retailers in Texas Begin Selling Porcelanite-Brand Tile.

In April 2009, Mr. De la Rosa attended an annual industry conference in Chicago, at which Grupo Lamosa was displaying its Porcelanite tile line. Mr. De la Rosa discovered that Grupo Lamosa was displaying Mundo Tile's best-selling Hispanic tiles. He questioned Grupo Lamosa's President of Ceramics, Sergio Narvaez ("Mr. Narvaez"), and Mr. Welsh about the display, reminding them that these products were exclusive to Mundo Tile in Texas. Mr. Narvaez and Mr. Welsh assured Mr. De la Rosa that they would not allow any Texas-based retailers to purchase the tiles.

At about this time, Grupo Lamosa started delaying orders placed by Mundo Tile, questioning its price list. As a result, customers were abandoning Mundo Tile, as it was increasingly unable to satisfy orders or replenish its inventory. Thereafter, reports of Porcelanite

---

[3] Mundo Tile initially brought a third-party complaint against Grupo Lamosa. *See* Doc. 14. After being informed by counsel for Grupo Lamosa, Lamosa Commercial Services, and Porcelanite that it would be equally secured with a judgment against Lamosa Commercial Services and Porcelanite as it would against Grupo Lamosa, Mundo Tile later dismissed without prejudice its third-party complaint pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Counter-Pls.' Notice of Voluntary Dismissal (Doc. 21).

products available for sale became more frequent, and other retailers in Texas sold the tiles at a lower price than Mundo Tile. Mundo Tile's network of contractors stopped buying from Mundo Tile, their trust fractured by the availability of Porcelanite-brand tiles at other retailers, and for prices significantly cheaper than at Mundo Tile. Mundo Tile's revenue dropped significantly.

In 2010, one of Mundo Tile's sub-distributors (Materiales El Valle) complained to Mr. De la Rosa that one of its competitors (Rodriguez Home Center) was selling Porcelanite-brand tile. When Mr. De la Rosa confronted Grupo Lamosa, Export Manager Leonor Cardenas ("Ms. Cardenas") apologized, as did Mr. Welsh. Mr. Welsh and Ms. Cardenas agreed to pull the products from Rodriguez Home Center and also offered, as a concession, to eliminate freight charges for Porcelanite orders placed by Mundo Tile on behalf of Materiales El Valle.

In 2011, Mr. Welsh called Mr. De la Rosa after hearing that Mundo Tile was considering suing Grupo Lamosa, seeking his assurance that this was not the case. Mr. De la Rosa acknowledged that he probably had grounds to sue Grupo Lamosa but took the position that no suit would be necessary if Grupo Lamosa would cure its violations and abide by the exclusivity agreement. Mr. Welsh agreed.

### D. Grupo Lamosa Suspends Mundo Tile's Account.

In 2012, after Mundo Tile had trouble making its payments on inventory invoices, Grupo Lamosa's finance department suspended Mundo Tile's credit line and informed Mundo Tile that it needed to agree to new terms or lower its balance. Mundo Tile's revenue had dipped below $6.5 million, and it was operating at a loss for the first time. Grupo Lamosa was refusing to fill orders and demanding that Mundo Tile turn over its real estate assets to Grupo Lamosa to cover its outstanding credit. Mundo Tile needed help and its credit account with Grupo Lamosa to satisfy its customers' orders.

### E. Mundo Tile Enters into 2012 Loan Agreements.

On January 27, 2012, Mr. De la Rosa sent an e-mail message to Mr. Welsh requesting a meeting to discuss Grupo Lamosa's sales of its tiles to Mundo Tile's competitors and other commercial matters. On February 24, 2012, Mr. De la Rosa flew to Grupo Lamosa's headquarters in Monterrey, Mexico, and met with Mr. Welsh and Mr. Narvaez. After Mr. De la Rosa raised Grupo Lamosa's breach of the exclusivity agreement and explained how Grupo Lamosa's failure to honor the exclusivity agreement destroyed his revenues and client base and decimated his business, Mr. Welsh promised to remove all unapproved Porcelanite-brand tiles from Mundo Tile's competitors and informed him that to stay in business and continue to receive inventory from Grupo Lamosa, Mundo Tile, and Mr. De la Rosa, personally, would have to sign promissory notes, credit agreements, and a guaranty agreement in the amount of Mundo Tile's outstanding credit balance. In addition, Mundo Tile would have to pledge its real estate assets as security.[4] App. in Supp. of Defs.' Resp. to Porcelanite's Mot. for Summ. J. 7 (De la Rosa Decl.

---

[4] Invoking the "sham-affidavit" doctrine, Porcelanite objects to Mr. De la Rosa's statement in his Declaration that Mr. Welsh's promise of Mundo Tile's continued exclusivity was contingent on its execution of the Loan Agreements, arguing that these statements are inconsistent with his sworn deposition testimony and, therefore, should not be considered by the court in evaluating whether Mundo Tile has raised a genuine dispute of material fact sufficient to defeat summary judgment. The court **overrules** this objection. The court has scrutinized Mr. De la Rosa's statements in his Declaration and his prior sworn deposition testimony, and finds that his statements in his Declaration are not clearly inconsistent with his previous sworn deposition testimony. *See generally S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996); *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 247 (N.D. Tex. 2011) (Under the "sham affidavit" doctrine, a "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit [that] contradicts, without explanation, his previous testimony.") (citations omitted). Specifically, after reviewing Mr. De la Rosa's deposition testimony concerning the numerous meetings he had with Grupo Lamosa's principals over the years and, in particular, 2012, the court concludes the deposition testimony is unclear, perhaps due to a language barrier, and, at best, shows some confusion on the part of Mr. De la Rosa as to what was said during various meetings held in 2012. For example, Mr. De la Rosa was asked: "Okay. Is it your testimony that at the meeting on February 24, 2012, there was no mention of your needing to enter into the loan documents that were ultimately executed in July?" He responded: "No. That's not my knowledge, no." Porcelanite's Summ. J. App. (De la Rosa Dep. Tr. 149:8 - 151:16). This testimony, and the remainder of the deposition testimony, is ambiguous, and the court is unable to conclude that Mr. De la Rosa's statements in his Declaration are clearly inconsistent with his deposition testimony. Accordingly, the court declines to strike Mr. De La Rosa's statements in his Declaration under the "sham affidavit" doctrine.

¶ 21) (Doc. 109).  In reliance on these promises of continued exclusivity, Mundo Tile agreed to the deal and signed the Loan Agreements.  *Id.*  Grupo Lamosa failed to keep these promises and did not enforce the exclusive distributorship for Mundo Tile, instead expanding its Texas presence.  *Id.* ¶ 22.

On July 24, 2012, Mr. De la Rosa, Mundo Tile, Ltd. and MT Trading LLC executed the following promissory notes: a negotiable promissory note in the original principal amount of $289,813 in favor of Lamosa Commercial Services and a revolving promissory note in the original principal amount of $340,000 in favor of Lamosa Commercial Services (sometimes collectively, the "2012 Lamosa Promissory Notes"); and a negotiable promissory note in the original principal amount of $1,233,871 in favor of Porcelanite (the "2012 Porcelanite Promissory Note").  These notes were secured by two separate deeds of trust to real property, respectively made in favor of Lamosa Commercial Services and Porcelanite.  On July 24, 2012, Mr. De la Rosa also executed a Guaranty Agreement in which he personally guaranteed all indebtedness and financial commitments of himself, Mundo Tile, Ltd. and MT Trading LLC, then-existing or thereafter incurred, including without limitation the 2012 Porcelanite Promissory Note and the negotiable promissory note in the original principal amount of $289,813 in favor of Lamosa Commercial Services.  The court will at times refer to these various loan documents, collectively, as the "Loan Agreements."

## F.    Mundo Tile Enters into 2014 Loan Agreements.

On March 9, 2013, Mr. De la Rosa was first notified by one of his employees that Lowe's was carrying one of Mundo Tile's best-selling Hispanic-oriented Porcelanite tiles, Umbria Café. Porcelanite had renamed the product for Lowe's as Marble Brown.  Lowe's was selling the Marble Brown for $0.95 per square foot, whereas Mundo Tile was selling the Umbria Café for $1.49.

Mundo Tile remained unprofitable and unable to recover its customer base. On May 30, 2014, Mr. De la Rosa, Mundo Tile, Ltd., MT Trading LLC, and MT Group Real Estate LLC executed an additional promissory note in the principal amount of $250,000 in favor of Lamosa Commercial Services (the "2014 Lamosa Promissory Note") and an additional promissory note in the original principal amount of $225,000 in favor of Porcelanite (the "2014 Porcelanite Promissory Note"). The court will at times refer to these various loan documents, as well as those executed in 2012, *supra*, collectively, as the "Loan Agreements." As in 2012, Mundo Tile agreed to sign the 2014 Loan Agreements based on Messrs. Welsh's and Narvaez's representations regarding removal of Porcelanite-brand products from Floor & Decor and Lowe's, and continuing promises of exclusivity in Texas. App. in Supp. of Defs.' Resp. to Porcelanite's Mot. for Summ. J. 8 (De la Rosa Decl. ¶ 24) (Doc. 109). Grupo Lamosa failed to keep these promises by, among other things, not removing the offending products from Lowe's (and actually expanding their Lowe's offerings), and allowing Mundo Tile's competitor, Rodriguez Home Center, to open new stores in the Rio Grande Valley offering Porcelanite-brand tile. *Id.* ¶ 25.

G.  **Lamosa Commercial Services and Porcelanite File this Lawsuit After Mundo Tile Defaults Under the Loan Agreements.**

Mundo Tile failed to pay when due and defaulted on the payment and other obligations under the Loan Agreements. On January 8, 2016, Lamosa Commercial Services and Porcelanite filed this lawsuit against Mundo Tile for breach of contract in connection with its default under the terms of the Loan Agreements and against Mr. De la Rosa, individually, for his failure to abide by the terms of Guaranty Agreement. They contend that, as of January 5, 2016, the total amounts due and owing were as follows: $795,212 to Lamosa Commercial Services under the 2012 Lamosa Promissory Notes, comprised of $623,264 in past due payments plus $171,948 in

accrued finance charges; $1,629,147 to Porcelanite under the 2012 Porcelanite Promissory Note, comprised of $1,180,294 in past due payments plus $448,853 in accrued finance charges; $283,838 to Lamosa Commercial Services under the 2014 Lamosa Promissory Note, comprised of $225,000 in past due payments plus $58,838 in accrued finance charges; and $283,838 to Porcelanite under the 2014 Porcelanite Promissory Note, comprised of $225,000 in past due payments plus $58,838 in accrued finance charges. In addition, Lamosa Commercial Services and Porcelanite seek foreclosure upon the real property under the two deeds of trust securing unpaid amounts due and owing them by Mundo Tile. They also seek prejudgment and postjudgment interest, as well as reasonable and necessary attorney's fees pursuant to the terms of the above-referenced loan documents as well as Texas Civil Practice and Remedies Code § 38.001(8), and costs.

Mundo Tile contests Lamosa Commercial Services's and Porcelanite's entitlement to recover under the Loan Agreements, asserting affirmative defenses of fraud, fraudulent inducement, offset, and waiver. Mundo Tile has also filed counterclaims for breach of contract to act as an exclusive distributor, fraud and fraudulent inducement, promissory estoppel, and unjust enrichment. Mundo Tile seeks actual and exemplary damages, prejudgment and postjudgment interest, reasonable and necessary attorney's fees, and costs, and requests a jury trial. In response to Mundo Tile's counterclaims, Lamosa Commercial Services and Porcelanite assert affirmative defenses of unclean hands, release based on disclaimers of reliance, statute of frauds, statute of limitations, laches, and waiver.

Lamosa Commercial Services and Porcelanite have moved for summary judgment on their respective affirmative breach of contract claims and on Mundo Tiles's affirmative defenses and counterclaims. Lamosa Commercial Services and Porcelanite also seek to prevent Mr. De la Rosa from testifying at trial with respect to Mundo Tile's lost profits, and move to strike

Mundo Tile's request for a jury trial. The court first addresses Lamosa Commercial Services's and Porcelanite's respective motions for summary judgment.

## II.     The Summary Judgment Motions

### A.     Applicable Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole

could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**B.     Analysis**

Lamosa Commercial Services and Porcelanite seek summary judgment on their respective breach of contract claims, arguing they are entitled to recover outstanding amounts due and owing under the Loan Agreements. Lamosa Commercial Services and Porcelanite also move for summary judgment on Mundo Tile's affirmative defenses, and Porcelanite additionally moves for summary judgment on Mundo Tile's counterclaims. In its Amended Answer, Mundo

Tile concedes it entered into the Loan Agreements, and that the debts have matured and are due and owing. Am. Ans. (Doc. 31). Mundo Tile, however, raises affirmative defenses of fraud and fraudulent inducement, estoppel, and waiver.

### 1. Mundo Tile's Affirmative Defenses to Breach of Contract Claims

Absent a valid affirmative defense, based on the concessions in Mundo Tile's Amended Answer that the debts have matured and have not been paid, Lamosa Commercial Services and Porcelanite would be entitled to summary judgment on their respective breach of contract claims. Viewing all summary judgment evidence in the light most favorable to Mundo Tile, however, the court concludes that genuine disputes of material fact preclude entry of summary judgment on Mundo Tile's affirmative defenses in favor of Lamosa Commercial Services and Porcelanite. Otherwise stated, viewing all evidence in the light most favorable to the nonmoving party (Mundo Tile), Lamosa Commercial Services and Porcelanite have not met their burden of pointing the court to the absence of evidence of at least one essential element of each defense. *See, e.g., Celotex*, 477 U.S. at 325; *Fontenot v. Upjohn Co.*, 78 F.2d 1190, 1194 (5th Cir. 1986). Specifically, there are genuine disputes of material fact regarding: whether Porcelanite had an agreement with Mundo Tile that it would have exclusive distributorship rights to Porcelanite-brand tiles; whether Porcelanite and Lamosa Commercial Services fraudulently induced Mundo Tile into signing the Loan Agreements by continuing to promise that Mundo Tile would be the exclusive distributor of Porcelanite-brand tiles in the relevant geographical areas in Texas; whether Porcelanite and Lamosa Commercial Services failed to disclose the sale of tile to other distributors in Texas or actively concealed these facts; and whether Porcelanite and Lamosa Commercial Services waived their respective rights to enforce the Loan Agreements, or are estopped from enforcing the Loan Agreements, by engaging in inconsistent conduct.

In short, as genuine disputes of material fact remain for trial on Mundo Tile's affirmative defenses, the court will deny Porcelanite's and Lamosa Commercial Services's respective motions for summary judgment on Mundo Tile's affirmative defenses.[5] As questions of fact remain fro the jury with respect to Mundo Tile's affirmative defenses to their affirmative breach of contract claims, even though Mundo Tile concedes that it defaulted on the Loan Agreements, the court also denies Porcelanite's and Lamosa Commercial Services's respective motions for summary judgment on their breach of contract claims.

### 2. Mundo Tile's Counterclaims

As previously stated, Mundo Tile has also filed counterclaims for breach of contract to act as an exclusive distributor, fraud and fraudulent inducement, promissory estoppel, and unjust enrichment. In support of its motion for summary judgment on Mundo Tile's counterclaims, Porcelanite argues that these counterclaims fail for three reasons: (1) the counterclaims are precluded because they depend upon an alleged exclusive distributorship agreement barred by the statute of frauds; (2) Mundo Tile may not recover because it intentionally and in writing both released and waived its counterclaims; and (3) to the extent that a counterclaim was not released or waived, Mundo Tile is time-barred from pursuing that claim. Viewing all evidence in the light most favorable to Mundo Tile, and under applicable law, the court agrees with Mundo Tile

---

[5] Although agreeing with Porcelanite's motion for summary judgment and incorporating many portions by reference, Lamosa Commercial Services filed its own summary judgment motion, contending that because the false representations about which Mundo Tile complains relate to an exclusivity agreement between Mundo Tile and Porcelanite, it should not be held accountable for such representations. As Mundo Tile correctly notes, however, whether Lamosa Commercial Services was a party to the underlying agreement is immaterial; its liability, if any, is based on whether it made false representations, including promises by its principals of continued exclusive rights to products manufactured by its sister company, Porcelanite, in exchange for Mundo Tile entering into the various loan agreements. Further, to the extent Lamosa Commercial Services contends that none of the fraudulent representations is attributable to it, the summary judgment record is to the contrary. *See* Defs.' App. in Supp. of Resp. to Mot. for Summ J. 56 (Welsh Dep. Tr. 133:20 - 134:2); 62 (Welsh Dep. Tr. 228:4 - 229:19).

that summary judgment on its counterclaims in Porcelanite's favor is not warranted.[6]

   *a.*    *Statute of Frauds*

Porcelanite contends that Mundo Tile's counterclaims are precluded because they all depend upon an alleged exclusive distributorship agreement barred by the statute of frauds. Mundo Tile counters that exceptions to the statute of frauds apply in this case, namely, the judicial admission and partial performance exceptions, thereby removing the agreement from the statute of frauds. The court agrees.

The statute of frauds requires a writing sufficient to indicate that a contract for the sale of goods for the price of $500 or more has been made between the parties and signed by the party against whom enforcement is sought. *See* Tex. Bus. & Com. Code Ann. § 2.201(a) (West 2009). The statute of frauds is an affirmative defense to breach of contract and renders a contract that falls within its purview unenforceable. *See id.* §§ 2.201(a), 26.01(a); Tex. R. Civ. P. 94; *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.). The party pleading the statute of frauds bears the initial burden of establishing its applicability. *See Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). Once that party meets its initial burden, the burden shifts to the opposing party to establish an exception taking the oral contract out of the statute of frauds. *See id.* The question of whether an exception to the statute of frauds applies is generally a question of fact. *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 158 (Tex. App. —Houston [14th Dist.] 2017, no pet.).

Viewing all summary judgment evidence in the light most favorable to the nonmovant (Mundo Tile), the court determines that the evidence is sufficient to raise a genuine dispute of material fact regarding whether an exception to the statute of frauds applies in this case.

---

[6] Porcelanite fails to provide legal arguments to support its motion for summary judgment on Mundo Tile's promissory estoppel and unjust enrichment counterclaims in its brief in support of its motion for summary judgment. Accordingly, the court will not address these counterclaims.

Specifically, Mundo Tile has provided the court with evidence that application of the judicial admission and partial performance exceptions to the statute of frauds apply, which would thereby remove the agreement from the statute of frauds.[7]  Although the issue of whether an agreement falls within the statute of frauds is a matter of law for the court to decide, whether the facts of a particular case fall within an exception to the statute of frauds is a question of fact. *Mugworld, Inc. v. G.G. Marck & Ass., Inc.*, 563 F. Supp. 2d 654, 658 (E.D. Tex. 2007) (citations omitted); *Duradril*, 516 S.W.3d at 158.  As genuine disputes of material fact remain for the jury regarding whether an exception to the statute of frauds applies, the court will deny Porcelanite's motion for summary judgment on Mundo Tile's counterclaims insofar as it relies on the statute of frauds.

b.     *Release and Waiver*

Porcelanite next contends that Mundo Tile may not recover because it released any existing claims against Porcelanite when it signed the Loan Agreements and waived its right to claim that it was fraudulently induced into signing the release in the Loan Agreements.  Mundo Tile counters that, consistent with Texas law, the release was insufficient both with respect to Mundo Tile's counterclaims and Mundo Tile's fraudulent inducement defense releases. Having carefully considered the language in the pertinent Loan Agreements, and under applicable case law, the court agrees with Mundo Tile.

---

[7] Section 2.201(c)(2) of the Texas Business and Commerce Code provides that a contract that does not satisfy the statute of frauds is nonetheless enforceable "if the party against whom enforcement is sought admits in his pleading, testimony or otherwise that a contract for sale was made[.]" Tex. Bus. & Com. Code § 2.201(c)(2).  Additionally, under the partial performance exception to the statute of frauds, an agreement that does not satisfy the statute of frauds but has been partially performed may be enforced if denying the enforcement would amount to a virtual fraud.  *See Duradril, L.L.C. v. Dynomaax Drilling Tools, Inc.*, 516 S.W.3d 147, 160-62 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Westergren v. National Prop. Holdings, L.P.*, 409 S.W.3d 110, 132 (Tex. App.—Houston [14th Dis.] 2013), *aff'd in part, rev'd in part*, 453 S.W.3d 419 (Tex. 2015).  Evidence of partial performance is contained in Mundo Tile's appendix (*see* Doc. 109) filed in support of its response to Porcelanite's motion for summary judgment and includes deposition testimony of Porcelanite employees, Mr. De la Rosa's deposition testimony and statements in his Declaration, and internal Porcelanite e-mails.

Mundo Tile, in bolded letters and capitalized type,

> release[d] and forever discharged [Porcelanite] . . . for all claims, demands, damages, actions, causes of action, or suits in equity, of any kind or nature, accruing before or after the date of this note [July 24, 2012] and whether known or unknown on this date, for or because of any matter or thing done, omitted or suffered to be done or omitted in any way directly or indirectly arising out of an of the events or circumstances recited in this Note.

App. to Brief in Supp. of Porcelanite's Mot. for Summ. J 6 (2012 Porcelanite Revolving Promissory Note ¶ 15) (emphasis omitted); 16-17 (2012 Porcelanite Promissory Note ¶ 15) (emphasis omitted) (Doc. 92).

A general release (one lacking expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement) will not operate to extinguish a claim when the contract containing the release was procured through fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 331-36 (Tex. 2011); *Forest Oil Corp. v. McAllen*, 268 S.W.3d 31, 54, 61 (Tex. 2008); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 180-81 (Tex. 1997). Although Porcelanite recognizes this principle of law, it contends there is no evidence in this case of false representations made by Porcelanite representatives to Mundo Tile in connection with the Loan Transactions. The court finds otherwise. *See* App. in Supp. of Defs.' Resp. to Porcelanite's Mot. for Summ. J. 7-9 (De la Rosa Decl. ¶¶ 21-25) (Doc. 109). In addition, the court concludes that the release language upon which Porcelanite relies, *supra*, falls well short of the standards set forth in *Italian Cowboy*, *supra*; *Forest Oil*, *supra*; and *Schlumberger*, *supra*.[8]

---

[8] Under Texas law, a release is a contract and is subject to the rules governing contract construction. *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990) (holding that a release is a contract subject to avoidance on the same grounds as any other contract) In construing contracts, the court's primary objective is "to ascertain and give effect to the intentions of the parties as expressed in the instrument." *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998) (citation omitted). To ascertain the parties' true intentions, the court examines "the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless." *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999). "A contract should be construed by determining how the reasonable person

In addition, the releases relied upon by Porcelanite do not mention Mundo Tile's claims for Porcelanite's violation of the exclusive distributorship agreement. The court declines Porcelanite's expansive reading of the releases at issue to encompass those claims. *See Victoria Bank & Trust v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). For a release to be effective under Texas law, it must "mention" the claim to be released. *Id.* Claims that are "not clearly within the subject matter of the release are not discharged." *Id.* Additionally, "general categorical release clauses are construed narrowly." *Id.* (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984)). The court agrees with Mundo Tile that the subject matter of the release is the issuance of credit in connection with the notes, not the nature of the tile distribution relationship between the parties.

In sum, the court will deny Porcelanite's motion for summary judgment on Mundo Tile's counterclaims insofar as it argues that Mundo Tile may not recover because it released any existing claims against Porcelanite when it signed the Loan Agreements and waived its right to claim that it was fraudulently induced into signing the release in the Loan Agreements. Porcelanite has failed to meet its burden of proof of establishing this defense as a matter of law.

      *c.*    *Statute of Limitations*

Porcelanite argues that Mundo Tile's counterclaims are time-barred under the applicable statute of limitations. Even if Mundo Tile's claims were brought after the expiration of the applicable statute of limitations, the court determines that its counterclaims were revived by the Texas revival statute set forth in section 16.069 of the Texas Civil Practice and Remedies Code.

---

would have used and understood such language, considering the circumstances surrounding its negotiation and keeping in mind the purposes intended to be accomplished by the parties when entering into the contract." *National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 128 (Tex. App. Houston [14th Dist.] 1997), *aff'd*, *Keck, Mahin & Cate*, 20 S.W.3d 692 (Tex. 2000) (citation and internal quotation marks omitted). The court has applied these rules of construction in interpreting the release provisions in the pertinent Loan Agreements.

Section 16.069 provides that if a counterclaim or cross claim is filed not later than thirty days after the date on which the party's answer is due and "arises out of the same transaction or occurrence that is the basis of an action," the claim is not barred by limitations "even though as a separate action it would be barred by limitation on the date the party's answer is required." Tex. Civ. Prac. & Rem.Code Ann. § 16.069.

Because Porcelanite's claims result from inducements made by Porcelanite relating to the exclusive distributorship agreement, the court concludes that Mundo Tile's claims in the present case arise out of the same facts and circumstances that are the basis of Porcelanite's suit. Further, Porcelanite does not argue to the contrary. Consistent with this court's previous rulings, see *Yumilicious Franchise, L.L.C. v. Barrie*, 2015 WL 1822877, at *3 (N.D. Tex. Apr. 22, 2015), the court determines that Mundo Tile's counterclaims were revived pursuant to section 16.069 upon Mundo Tile's filing of its counterclaims within thirty days of the filing of Porcelanite's claims against it. In addition, as the statute of limitations is an affirmative defense for which Porcelanite has the burden, Porcelanite must show the absence of a genuine dispute of material fact and establish each element of its statute of limitations defense as a matter of law. Porcelanite has failed to meet its burden and the court, therefore, will deny its motion for summary judgment as to Mundo Tile's counterclaims on statute of limitations grounds.

III.    **Plaintiffs' Motion to Exclude the Opinion Testimony of Mr. De la Rosa**

Lamosa Commercial Services and Porcelanite seek to preclude Mr. De la Rosa from testifying at trial regarding lost profits and related damages, whether the testimony is offered by him as an expert witness or as the owner of Mundo Tile. If testifying as an expert, Lamosa Commercial Services and Porcelanite object that Mr. De la Rosa was not timely designated. If testifying as Mundo Tile's owner, they object that his testimony concerning lost profits "is not proof of lost profits 'by competent evidence with reasonable certainty.'" Pls.' Mot. to Exclude 5

(Doc. 96) (quoting *Holt Atherton Indus. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). According to Lamosa Commercial Services and Porcelanite, Mr. De la Rosa's testimony is not based on "objective facts, figures, or data from which the amount of lost profits can be ascertained" and rests on "unfounded assumptions." *Id.* (citations omitted).

### A.    Legal Standard

In a diversity case, such as this one, the admissibility of evidence is a procedural issue governed by federal law. *See Reed v. General Motors Corp.*, 773 F.2d 660, 663 (5th Cir. 1985). Rule 702 governs the admissibility of expert testimony and provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial court acts as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In its gatekeeping role, the court determines the admissibility of expert testimony based on Rule 702 and *Daubert* and its progeny. "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *E.E.O.C. v. S&B Indus., Inc.*, 2017 WL 345641, at *2 (N.D. Tex. Jan. 24, 2017) (Fitzwater, J.) (internal quotation marks omitted) (citing *Kumho Tire Co.*, 526 U.S. at 147).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Fed. R. Evid. 702(d) (requiring that an "expert has reliably applied the principles and methods to the facts of the case").

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Fed. R. Evid. 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight*, 482 F.3d at 355. "The reliability prong mandates that expert opinion be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (internal quotation marks omitted). "[T]here is no requirement that an expert derive his opinion from firsthand knowledge or observation." *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 746 (5th Cir. 2017) (internal quotation marks omitted).

"The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (internal quotation marks omitted). If "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Courts consider the following non-exclusive list of factors when conducting the reliability inquiry:

> (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community.

*Johnson*, 685 F.3d at 459 (internal quotation marks omitted).

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *see also Johnson*, 685 F.3d at 459. The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turn[] upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

B.    **Analysis**

In response to Lamosa Commercial Services and Porcelanite's motion to exclude Mr. De la Rosa's testimony under Rule 702, Mundo Tile states that Mr. De la Rosa only intends to offer lay testimony regarding lost profits and related damages, and not expert testimony.  Accordingly, Lamosa Commercial Services and Porcelanite's motion to exclude Mr. De la Rosa's testimony as an expert witness pursuant to Rules 702 and *Daubert* is **denied**.

Federal Rule of Evidence 701, titled "Opinion Testimony of Lay Witnesses," provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R.  Evid. 701.

Rule 701 was amended in 2000 to add paragraph (c).  The Committee Notes indicate that the purpose of the amendment was to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."  Fed. R.  Evid. 701 advisory committee's note (2000 amendments).  The amendment, however, was not intended to affect the "prototypical examples of the type of evidence contemplated by the adoption of Rule 701," such as where "the owner . . . of a business [testifies] to the value or projected profits of a business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." *Id.*  (internal punctuation omitted).  The Committee noted that "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized

knowledge that the witness has by virtue of his or her position in the business." *Id.* As recently summarized by another judge in this Division, the Federal Rules of Evidence and Fifth Circuit case law recognize the ability of business owners or officers to provide lay testimony of lost profits:

> "The Federal Rules of Evidence . . . confirm that [a witness's] position as company president permits [him] a broader range of testimony than a traditional lay witness would possess when testifying to matters concerning [his] business." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010) (per curiam). The Fifth Circuit recognizes that corporate officers may testify as laypersons based on knowledge and analysis derived from duties held at the company. *See United States v. Valencia*, 600 F.3d 389, 416 (5th Cir. 2010) (per curiam). Thus business owners or officers may offer lay testimony on lost profits because they have personal knowledge of their business. *See Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) (collecting cases from other circuits). "The modern trend favors the admission of [lay] opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Miss. Chem. Corp.*, 287 F.3d at 374 (quoting *Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 403 (3d Cir. 1980) ). This rule applies to a company's chief financial officer. *See Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 169 (5th Cir. 2010) (holding in suit involving damages to business that trial court did not abuse its discretion when it permitted plaintiff's chief financial officer to testify concerning lost profits because corporate officer who provides projections or opinions about changes in profits is not an expert but a lay witness); *but see DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 686 (5th Cir. 2003) (vacating damages award where plaintiff's witness had little significant actual knowledge about plaintiff and its operations, so witness could not provide lay opinion testimony).

*Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2018 WL 2441829, at *3 (N.D. Tex. May 31, 2018) (Fitzwater, J.).

The testimony of Mr. De la Rosa concerning Mundo Tile's lost profits is lay testimony under Rule 701 because he has personal knowledge of both the data and the method used to calculate lost profits. In this case, Mr. De la Rosa is the founder and sole operator and owner of Mundo Tile, and has held that role for over fourteen years, and he has worked in the tile and flooring business since 1989. He holds an undergraduate degree in software engineering and a Masters in Business Administration. Mr. De la Rosa's general responsibilities afford him

sufficient knowledge of Mundo Tile's financials to testify regarding lost profits. As a result of his regular duties, he is very familiar with the company's financials and the court concludes he has the requisite personal knowledge to provide lay testimony about Mundo Tile's lost profits. For these reasons, the court holds that Mr. De la Rosa's testimony is admissible as Rule 701 lay opinion testimony and, therefore, **denies** Plaintiffs' Motion to Exclude the Opinion Testimony of Mr. De la Rosa.

While Lamosa Commercial Services and Porcelanite make numerous objections, in the context of Rule 702, to the reliability and assumptions underlying Mr. De la Rosa's conclusions regarding the amount of Mundo Tile's alleged lost profits and related damages, these critiques of his calculations concern the weight, and not the admissibility of his testimony. Lamosa Commercial Services and Porcelanite will have the opportunity to offer rebuttal testimony and to deconstruct Mr. De la Rosa's numbers and expose various assumptions upon which he relies during cross-examination. *See Everett*, 2018 WL 2441829, at *6 (citing *Miss. Chem. Corp.*, 287 F.3d at 374) (holding that ability of counsel to challenge actual and expected production figures through cross-examination supported admission of testimony as lay opinion). "Such determinations are matters for the jury, not the court[,] at the motion to exclude stage." *Id.*

## IV. Plaintiffs' Motion to Strike Jury Demand

Mundo Tile requests a trial by jury. *See* Ans. & Countercl. ¶ 55 (Doc. 14). Lamosa Commercial Services and Porcelanite argue that Mundo Tile relinquished its right to trial by jury when it "signed nine separate [Loan Agreements] containing conspicuous jury waivers[.]" Pls.' Mot. to Strike Jury Demand 2 (Doc. 98).[9] Five of the Loan Agreements contain a clause that

---

[9] As Mundo Tile correctly notes in its response brief, however, "the nine separate waivers were not in fact separate, but part of only two loan transactions, each of which contained various ancillary agreements such as promissory notes, security agreements, and disclaimers[.]" Defs.' Resp. 8 (Doc. 112).

reads: Mundo Tile "knowingly, intentionally, irrevocably, unconditionally and voluntarily . . . waives, relinquishes, and forever forgoes the right to a trial by jury in any action or proceeding based upon, arising out of, or in any way relating to [the Loan Agreements] or any conduct, act or omission of Lender or Debtor. . . ." *See* Pls.' App. in Supp. of Mot. to Strike Jury Demand 9 (Guaranty Agreement ¶ 30) (Doc. 99).[10]  Four of the Loan Agreements contain a jury waiver covering "any action, proceeding or counterclaim arising out of or relating to any of the [Loan Agreements]." *Id.* at 24, 49, 77, 102, 113, 125, 137, 158.  The issue presented is whether these Loan Agreements constitute a waiver by Mundo Tile of its right to a jury trial.

### A.    Legal Standard

The Seventh Amendment of the Constitution preserves the common law right to a jury trial in civil suits. U.S. Const. amend. VII. The right, however, may be waived by prior written agreement of the parties.  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986); *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002).  "There is a presumption, however, against a waiver of the right to a jury trial."  *Yumilicious Franchise, L.L.C. v. Barrie*, 2014 WL 4055475, at *11 (N.D. Tex. Aug. 14, 2014) (Lindsay, J.) (citing *Powell*, 191 F. Supp. 2d at 813), *reconsideration denied*, *Yumilicious Franchise, L.L.C. v. Barrie*, 2015 WL 1822877 (N.D. Tex. Apr. 22, 2015), *aff'd*, 819 F.3d 170 (5th Cir. 2016).  Such written agreements to waive the right to jury trial are generally enforceable against parties who bring suit, as long as the waiver was made knowingly, voluntarily, and intelligently.  *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998) (discussing waiver in the civil context). In determining whether a jury-trial waiver was made knowingly, voluntarily, and intelligently, courts in the Fifth Circuit generally balance four factors: (1) whether both parties had an

---

[10] The court has examined the jury waiver provisions contained in paragraph 17 of Exhibits A-5, A-6, A-7, and A-8 of Plaintiffs' Appendix in Support of Motion to Strike Jury Demand, and concludes they contain nearly identical language to that in paragraph 30 of the Guaranty Agreement.

opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining power of the parties, and (4) the business acumen or professional experience of the party opposing the waiver. *See, e.g.*, *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, 2017 WL 3887235, at *1-2 (S.D. Tex. Sept. 5, 2017); *Yumilicious*, 2014 WL 4055475, at *11; *Seven Seas Petroleum, Inc. v. CIBC World Markets Corp.*, 2012 WL 175415, at *2 (S.D. Tex. Jan. 20, 2012) (citations omitted). Some courts in the Fifth Circuit use a five-factor test that asks whether the party was represented by counsel. *See, e.g., JPMorgan Chase Bank, N.A. v. Classic Home Fin., Inc.*, 2012 WL 201533, at *3 (S.D. Tex. Jan. 23, 2012), *aff'd*, 548 F. App'x 205 (5th Cir. 2013); *Westside–Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp. 2d 694, 707 (E.D. La. 1999) (citation omitted). Although the court will not treat legal representation as an additional factor, the court will address this inquiry within its discussion of the third and fourth factors (disparity of bargaining power and business acumen). *See, e.g., Jones*, 2017 WL 3887235, at *1 (finding that inquiry into legal representation is subsumed within the broader third and fourth factors).

"Circuits are split on the issue of which party in a jury trial waiver dispute bears the burden of showing the knowingness and voluntariness of a waiver." *Id.* at *1-2 (collecting cases). The Fifth Circuit has yet to decide the issue. *Id.; see also Zavala v. Aaron's, Inc.*, 2015 WL 5604766, at *2 (E.D. Tex. Sept. 23, 2015) (recognizing that the Fifth Circuit has "never expressly decided the issue"); *Yumilicious*, 2014 WL 4055475, at *11 (same); *Powell*, 191 F. Supp. 2d at 813 (same). In keeping with the majority of federal courts in this circuit, this court previously recognized that the burden of demonstrating waiver should be placed on the party asserting waiver. *Yumilicious*, 2014 WL 4055475, at *11; *see also Jones*, 2017 WL 3887235, at *2 (placing the burden on the party seeking waiver and noting that "several of our sister district

courts recognize that the majority of federal courts place the burden on the party seeking waiver and have followed suit") (citations omitted); *Zavala*, 2015 WL 5604766, at *2 (collecting cases). Accordingly, in keeping with its prior jurisprudence and the majority of federal courts to consider the issue, the court places the burden on Lamosa Commercial Services and Porcelanite to demonstrate that Mundo Tile knowingly, voluntarily, and intelligently waived the right to a jury trial.

### B. Analysis

#### 1. Opportunity to Negotiate Contract Terms

Lamosa Commercial Services and Porcelanite contend that "Mr. De la Rosa received drafts prior to executing the Loan Agreements and had an opportunity to negotiate various terms contained in the Loan Agreements." Pls.' Mot. to Strike Jury Demand 4 (Doc. 98). In support, they reference the following excerpt from Mr. De la Rosa's deposition:

> Question: And you went there and you had the opportunity, you read through the documents and you signed them after you read through them, didn't you?
>
> Mr. De la Rosa: Yes.

Pls.' App. in Supp. of Mot. to Strike Jury Demand 197 (De la Rosa Dep. Tr. 161:13-16).

In opposition, Mundo Tile contends that it did not have an "opportunity to negotiate, bargain for, or even review final drafts of any of the agreements prior to closing." Defs.' Resp. 2 (Doc. 112). In his Declaration filed in support of Mundo Tile's response brief, Mr. De la Rosa states that although he was provided with a draft of the 2012 Loan Agreements in advance of the closing, and attempted to negotiate changes, Lamosa Commercial Services's and Porecelanite's counsel, Jackson Walker L.L.P. ("Jackson Walker"), refused to make any of his changes, and that he was not provided an opportunity to negotiate any contractual terms, as they were

presented to him as "take-it-or-leave-it" transactions. App. in Supp. of Defs.' Resp. to Pls.' Mot. to Strike Jury Demand 3 (De la Rosa Decl. ¶¶ 3-4) (Doc. 114). Mundo Tile further argues that Lamosa Commercial Services and Porcelanite selectively quote from Mr. De la Rosa's deposition transcript, creating the misleading impression that he testified that he had an opportunity to negotiate the Loan Agreements, whereas, read in context, Mr. De la Rosa testified otherwise:

| | |
|---|---|
| Question: | Okay. You had took [sic] the opportunity to read through the two credit agreements before you signed them, didn't you? |
| Mr. De la Rosa: | **They changed something at the end. So when I g[o]t to the offices, they were still writing, making changes, I guess on the amounts only. And but I sent - they sent me some drafts before. But they were - they changed. So generally I will say yes, but I never saw the final one.** |
| Question: | Well, you saw it before you signed it, right? |
| Mr. De la Rosa: | **Yeah, when I signed it.** |
| Question: | Okay. And where did you do the signing, where was that at? |
| Mr. De la Rosa: | At your offices in downtown Dallas. |
| Question: | And you went there and you had the opportunity, you read through the documents and you signed them after you read through them, didn't you? |
| Mr. De la Rosa: | Yes. |

*Id.* at 8 (De la Rosa Dep. Tr. 160:24 - 161:12) (emphasis added). In addition to this uncontroverted deposition testimony regarding last-minute changes to the Loan Agreements, Mr. De la Rosa similarly states in his Declaration that when he arrived at Jackson Walker's offices in Dallas for the closing, "Jackson Walker's attorneys were still editing and making changed to the

agreements.  The only opportunity I had to read the agreements was at the closing table.  Further, I was not allowed to make any changes to the underlying documents."  *Id.* at 3-4 (De la Rosa Decl. ¶ 5).  Mr. De la Rosa also states in his Declaration that he was never provided with drafts of the 2014 Loan Agreements and that the first time he saw them was at the closing.  *Id.* at 4 (De la Rosa Decl. ¶ 6).  Finally, he states in his Declaration that at the time of the loan transactions, Lamosa and Porcelanite had suspended Mundo Tile's credit accounts, "and presented the Loan Transactions to Mundo Tile as the only way to reopen the accounts, place product orders, and, ultimately, stay in business."  *Id.* at 4 (De la Rosa Decl. ¶ 7).

In reply, Lamosa Commercial Services and Porcelanite concede that "final loan documents were being edited and recalculated" ahead of the closing.  Pls.' Reply 4 (Doc. 105).  They argue that, nevertheless, "from January to July of 2012, and again during 2014, Mundo Tile had ample opportunity to review the Loan Agreements, offer comments, and look for better financing elsewhere."  *Id.* at 4-5.

In assessing the negotiability of a contract, courts ask whether there was actual negotiation over contract terms.  *Jones*, 2017 WL 3887235, at *2 (citation omitted); *Zavala*, 2015 WL 5604766, at *3 (citation omitted).  Lack of actual negotiations, however, does not necessarily mean the contract was not negotiable.  *Jones*, 2017 WL 3887235, at *2; *Zavala*, 2015 WL 5604766, at *3.  "Rather, the question is whether there was an opportunity for negotiation."  *Jones*, 2017 WL 3887235, at *2 (citation omitted).

In light of Mr. De la Rosa's deposition testimony and his Declaration, as detailed above, and absent any contradictory evidence from Plaintiffs, the court concludes that there is no evidence that the parties engaged in actual negotiations or that Mundo Tile had any real opportunity to negotiate the terms of the Loan Agreements.  Further, although Lamosa

Commercial Services and Porcelanite are correct that Mundo Tile could have looked for better financing elsewhere if it did not agree with the contractual terms, this is not enough to overcome the undisputed evidence that last-minute changes were made to some of the documents at the time of closing, depriving Mundo Tile of any real opportunity to negotiate contractual terms. For these reasons, the court concludes that this first factor weighs against enforcing the jury waivers.

### 2. *Conspicuousness of the Jury Waivers*

In arguing that the jury waivers are conspicuous, Plaintiffs point out that the waivers are set forth in separate paragraphs with labeled headings, have capital lettering, and in many cases are in bold-faced font. Mundo Tile does not dispute that the waivers are conspicuous.

After reviewing the waivers, all in capital lettering and mostly bold-faced font, the court concludes that they are conspicuous. *See, e.g.*, *Jones*, 2017 WL 3887235, at *3 ("In determining the conspicuousness of a contract provision, courts ask whether the provision was in bold-face or conspicuous type.") (citation omitted); *Zavala*, 2015 WL 5604766, at *2 ("Courts determine the conspicuousness of jury waiver clauses on a case-by-case basis, and consider factors such as the typeface, the length of the document, and the location of the waiver clause."). This second factor, therefore, weighs in favor of enforcing the jury waivers.

### 3. *Disparity of Bargaining Power*

Lamosa Commercial Services and Porcelanite argue that this third factor weighs in their favor because the "parties regularly engaged in arms-length transactions and neither party had a gross advantage in bargaining strength." Pls.' Mot. to Strike Jury Demand 4 (Doc. 98). In response, Mundo Tile contends Lamosa Commercial Services and Porcelanite held a gross disparity in bargaining power as a "multi-national, publicly traded manufacturing and

distribution conglomerate with 2016 revenues approaching one billion dollars[,]" while Mundo Tile is a "local, family-owned and operated tile retailer specializing in the sale of Porcelanite-brand tiles." Defs.' Resp. 7 (Doc. 112). Mundo Tile also contends that "because [its] business model relied almost exclusively on the sale of Porcelanite-branded tiles, [it] remained at all times entirely dependent on continued supply from Plaintiffs to remain in operation." *Id.* Mundo Tile also notes that it was unrepresented by counsel with respect to the 2012 and 2014 Loan Agreements.

"Inequality in bargaining power suggests a jury waiver was not executed knowingly or intelligently. To invalidate a waiver provision . . . the bargaining differential must be the kind of extreme bargaining disadvantage or gross disparity in bargaining position that occurs in certain exceptional situations." *Zavala*, 2015 WL 5604766, at *3 (internal punctuation and citations omitted). Further, "that a contract is unilateral suggests that there is a disparity in bargaining power and/or the parties did not have an opportunity to negotiate." *Id.*; *see also Powell*, 191 F. Supp. 2d at 814 (A wholly one-sided waiver "demonstrates that [a party] lacked a realistic opportunity to negotiate at arms-length."). An agreement is unilateral when only one party is prohibited from being able to request a jury trial. *Zavala*, 2015 WL 5604766, at *3.

In this case, other than referencing the number of years Mr. De la Rosa has been in the tile business and prior business dealings between the parties, Lamosa Commercial Services and Porcelanite present no evidence of the parties' bargaining power. Mundo Tile presents the Declaration of Mr. De la Rosa in which he states that Mundo Tile's business relied almost exclusively on the sale of Porcelanite-brand tiles, making it *entirely dependent* on a continued supply of those tiles to remain in operation. *See* App. in Supp. of Defs.' Resp. to Pls.' Mot. to Strike Jury Demand 2 (De la Rosa Decl. ¶ 2) (Doc. 114). Further, with respect to Lamosa

Commercial Services and Porcelanite's suggestion that certain of the jury waiver provisions were bilateral, indicating equal bargaining power and negotiability, the court has reviewed the jury waivers and determines that the majority were unilateral, binding only on Mundo Tile. *See* Pls.' App. in Supp. of Mot. to Strike Jury Demand 9 (Guaranty Agreement ¶ 30); 102 (2012 Porcelanite Revolving Promissory Note ¶ 17); 113 (2012 Porcelanite Negotiable Promissory Note ¶ 17); 125 (2012 Lamosa Negotiable Promissory Note ¶ 17); 137 (2012 Lamosa Revolving Promissory Note ¶ 17).

Under these circumstances, the court concludes that undisputed evidence of Mundo Tile's complete dependence on Porcelanite-brand tiles to stay in business, coupled with the unilateral nature of the majority of the Loan Agreements, reveals a gross disparity in bargaining positions between Lamosa Commercial Services and Porcelanite, on the one hand, and Mundo Tile, on the other hand. This disparity was further enhanced by Mundo Tile's lack of legal representation in the face of Lamosa Commercial Services's and Porcelanite's representation by the sophisticated law firm of Jackson Walker. For these reasons, the court concludes that this third factor weighs against enforcing the jury waivers.

### 4. *Business Acumen and Professional Experience*

Lamosa Commercial Services and Porcelanite argue that this fourth factor weighs in their favor because Mr. De la Rosa was "a business professional with nearly 20 years of experience in the tile industry and conducted millions of dollars' worth of business before executing the Loan Agreements." Pls.' Mot. to Strike Jury Demand 4 (Doc. 98). In response, Mundo Tile asserts that Mr. De la Rosa had "little business or professional experience [with regard to] loan or security agreements." Defs.' Resp. 7 (Doc. 112).

While Mr. De la Rosa may not have had the same business sophistication as Lamosa Commercial Services and Porcelanite, it is apparent he had years of business and professional experience. Although he may not have had experience with loan and security agreements, Mr. De la Rosa stated in his Declaration that he disagreed with the "Waiver of Jury Trial" provision in the 2012 Loan Agreements, and attempted to negotiate this provision, but counsel at Jackson Walker refused to negotiate. *See* App. in Supp. of Defs.' Resp. to Pls.' Mot. to Strike Jury Demand 3 (De la Rosa Decl. ¶ 3) (Doc. 114). As an experienced businessperson who had entered into contracts before, Mr. De la Rosa can be presumed to understand the importance of reading contracts before signing them and, based on unequivocal statements in his Declaration, apparently understood the import of the jury waiver provisions he signed. *See, e.g., Zavala*, 2015 WL 5604766, at *2 ("A party has sufficient business acument if [he is] able to understand the import of a jury waiver provision.") (citation omitted); *Jones*, 2017 WL 3887235, at *4 ("An understanding of the clear and unambiguous language of the jury waiver requires no extraordinary level of sophistication.") (citation omitted). For these reasons, the court concludes this fourth factor weighs in favor of enforcing the waivers.

Having considered these factors, as well as the facts and surrounding circumstances, the court **concludes**, on balance, that Lamosa Commercial Services and Porcelanite have failed to meet their burden of demonstrating that Mundo Tile's jury trial waiver in the Loan Agreements was knowing, voluntary, and intelligent. Although the jury waivers are conspicuous, and consideration of Mr. De la Rosa's business acumen favors enforcing the jury waivers, the record shows Mundo Tile did not have an opportunity to negotiate the contractual language and, to the extent it attempted negotiation, it was rebuffed. Further, the jury waiver in the majority of the Loan Agreements is unilateral, suggesting that either there was disparity in the bargaining power

of the parties or the parties lacked an opportunity to negotiate the terms of the jury waiver. The unilateral nature of the majority of the Loan Agreements, evidence of Mundo Tile's lack of opportunity to negotiate or actual negotiation, lack of legal representation, and the disparate bargaining power between the parties caused by, among other things, the nearly complete dependence of Mundo Tile on Lamosa Commercial Services and Porcelanite to supply it with Porcelanite-brand tiles, demonstrate that Mundo Tile did not knowingly, voluntarily and intelligently enter into the jury waivers. Accordingly, the jury waivers are not enforceable as a matter of law, and the court **denies** Plaintiffs' Motion to Strike Jury Demand.[11]

## V.  Conclusion

For the reasons herein stated, the court **denies** Plaintiff Revestimientos Porcelanite, S.A. de C.V.'s Motion for Summary Judgment (Doc. 90); **denies** Plaintiff Servicios Comerciales Lamosa, S.A. de C.V.'s Motion for Summary Judgment (Doc. 93); **denies** Plaintiffs' Motion to Exclude the Opinion Testimony of Defendant Mauricio De la Rosa (Doc. 96); and **denies** Plaintiffs' Motion to Strike Jury Demand (Doc. 98).

The claims and counterclaims remaining for trial are: Lamosa Commercial Services's and Porcelanite's respective claims for breach of contract and for foreclosure on the real property pledged in the deeds of trust; and Mundo Tiles's counterclaims for breach of contract, fraud and fraudulent inducement, promissory estoppel, and unjust enrichment. Also remaining for trial are Lamosa Commercial Services and Porcelanite's affirmative defenses of unclean hands, release based on disclaimers of reliance, statute of frauds, statute of limitations, laches, and waiver; and Mundo Tile's affirmative defenses of fraud, fraudulent inducement, offset of damages, and waiver.

---

[11] Because the court concludes that the jury waivers are unenforceable, the court does not address Mundo Tile's additional argument that Plaintiffs' Motion to Strike Jury Demand is untimely. *See* Defs.' Resp. 1 (Doc. 112).

In light of the court's opinion on the pending motions and the necessarily fact-intensive nature of the remaining claims, counterclaims, and affirmative defenses, the court encourages the parties to consider settlement of this matter. The docket sheet reflects that the parties attempted unsuccessfully to resolve this matter by way of mediation on August 16, 2016 (*see* Doc. 25), which is more than two years ago. Now that the parties have the benefit of the court's ruling, the court believes that a second mediation is in order. In that vein, the court **directs** the parties to select a mediator and mediate this case by **October 29, 2018**, before a mediator of the parties' choosing. Alternatively, if the parties desire a United States Magistrate Judge to conduct the mediation or settlement conference, they are to notify the court in writing by **September 7, 2018.** If the parties agree to use a Magistrate Judge, the court will enter the appropriate order.

**It is so ordered** this 30th day of August, 2018.

Sam A. Lindsay
United States District Judge